[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE
The defendant has filed a motion to strike the third and fifth counts of the plaintiff's amended complaint. With a motion to strike all of the facts alleged in the complaint and facts necessarily implied from those allegations are accepted as true, and the complaint is construed in the manner most favorable to the pleader. Blancato v. Feldspar Corporation, 203 Conn. 34, 36, 37. While a motion to strike admits all facts pleaded, it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. CT Page 3362 Mingachos v. CBS, Inc., 196 Conn. 91, 108; Blancato v. Feldspar Corporation, supra, 36, 37. The dispute in this case centers over a setoff taken by the defendant bank against a bank account of a law firm which held funds for the plaintiff and other clients. The law firm's account was maintained as a trustee account with the bank, although there is a dispute between the parties as to the type of account involved and the legal rights and obligations of the defendant, the law firm, and the law firm's clients.
The third count of the amended complaint incorporates allegations of the first and second count. It alleges that the law firm maintained a checking account with the bank in the name of the law firm partnership followed by the designation of "trustee", that the plaintiff gave the law firm $146,000 to purchase a parcel of real estate, and that the law firm deposited the funds in the account maintained with the bank. Paragraphs 9 through 11 contend that the bank set off sums owed to it by the law firm from the bank account totalling over $268,000, which included $146,000 of the plaintiff's money, and that the setoffs were wrongful in that the bank knew third parties had funds in the law firm's trustee account. In paragraph 12 it is claimed that the setoffs were wilful and malicious in that the bank failed to properly inquire into the actual ownership of the funds in the bank account when it had a duty to do so, or that it had actual knowledge that the funds in the account were not the law firm's funds, including the plaintiff's $146,000. These actions are claimed to be unfair or deceptive acts or practices within trade or commerce which caused the plaintiff to suffer substantial injuries and an ascertainable financial loss. Section 42-110b of the General Statutes prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce, and section 42-110g of the General Statutes creates a statutory cause of action for any person who sustains any ascertainable loss of money or property as a result of any method, act or practice prohibited by section 42-110b.
The defendant contends in its motion to strike that banks are exempt from these statutes which are part of the Connecticut Unfair Trade Practices Act [CUTPA]. The defendant does not contend that the acts in question were not within "trade or commerce" as defined in section 42-110a(4) or that the actions taken by the bank do not come under the three part test for determining whether conduct is an unfair or deceptive practice stated in such cases as McLaughlin Ford, Inc. v. Ford Motor Co., 192 Conn. 558, 567, 568; Mead v. Burns, 199 Conn. 651, 664, 665; Conaway v. Prestia,191 Conn. 484, 492, 493; and Dow Condon, Inc. v. Anderson, 203 Conn. 475, CT Page 3363 483. Since the motion to strike is limited to the claim that CUTPA does not apply to the defendant because it is a banking institution, only that issue will be considered.
The defendant's position relies upon the statement in cases such as Russell v. Dean Witter Reynolds, Inc.,200 Conn. 172, 179, that in interpreting CUTPA the court should be guided by interpretations of the Federal Trade Commission Act [FTCA], 5 U.S.C. § 45 (a)(1), made by the federal courts and the Federal Trade Commission. From this the defendant argues that CUTPA does not apply to banks because there is no federal case law finding conduct of banks to be unfair trade acts and that banks are expressly exempted from coverage under the FTCA, 15 U.S.C. § 45 (a)(2). Following this concept, several Superior Court decisions have concluded that banks are exempt from coverage under CUTPA. People's Bank v. Horesco, 1 CSCR 62 (1986), affirmed on other grounds, 205 Conn. 319; Bristol Savings Bank v. Sattler,4 CSCR 351 (1989); Economic Development Corporation v. Citytrust, 2 CtLR 639 (1990).
There is a split of authority, however, among the Superior Court decisions, and a majority of the cases hold that CUTPA does apply to banks. Weisman v. Westport Bank 
Trust Co., 1 CSCR 283, 284 (1986); Pia v. Midconn Bank 
Security of America Life Insurance Co., 3 CSCR 143 (1989); Andrews v. Connecticut Bank Trust Co., 1 CSCR 795, 796
(1986); Connecticut Bank Trust Co. v. Benedetto,5 CSCR 844, 845 (1990); Ebersol McCormick v. Torrington Savings Bank, 4 CSCR 499, 500 (1989); Peterson v. People's Bank,5 CSCR 1 (1990); Platt v. Krieger, 5 CSCR 187 (1990); National Industrial Bank of Connecticut v. Harmon, 5 CSCR 187, 188
(1990); Financial Federal Savings Bank v. Breen, 2 CtLR 528 (1990); Juris Associates Limited Partnership v. Bank of Boston, Connecticut, 1 CtLR 470 (1990); Old Town Common Condo Association, Inc. v. O. Corporation, 2 CtLR 464 (1990); Westledge Real Estate, Inc. v. Suffield Bank, 3 CtLR 217 (1991); Bristol Savings Bank v. Szdlowski, 3 CtLR 146 (1991); Wright v. Bank of Darien, 3 CSCR 253 (1988); American Savings Bank, FSB v. Amity Bank v. Cheshire Management Co., No. B-88-534, D.C. Conn. (1989). See also, Becker v. New Haven Savings Bank, No. 84-518, D.C. Conn. (1985); Pequonnock Avenue Associates v. Society for Savings, 6 Conn. Law Trib. No. 17, page 20 (1980).
While the numbers game is not controlling, the reasoning in the cases holding that CUTPA applies to banks is more persuasive for several reasons. See in particular Financial Federal Savings Bank v. Breen, supra, where Judge Freed discussed the cases and arguments on both sides of the issue. CT Page 3364 The fact that a particular industry, such as banks, may be regulated by one set of statutes, does not preclude regulation or liability under another. Mead v. Burns, supra, 663. CUTPA is remedial statute which should be liberally construed. Heslin v. Connecticut Law Clinic of Trantolo 
Trantolo, 190 Conn. 510, 520; Hinchliffe v. American Motors Corporation, 184 Conn. 607, 615n. 4.
The fact that banks are subject to state and federal regulations for certain activities does not mean that those regulations cover all actions taken by banks, including all illegal ones, and the federal regulations are primarily directed to money lending activities of banks. The dispute in this case centers, for example, on alleged wrongful taking of funds by the bank from the client of a law firm which maintained an account with the bank, where the plaintiff-client did not have any apparent direct contractual relationship with the bank itself. The defendant has not shown that state or federal law regulates this type of situation, so a preemption argument is unpersuasive.
Another related consideration is that section 42-110c of the General Statutes provides certain exemptions from CUTPA. Banks are not expressly exempted, and while "transactions or actions otherwise permitted under law as administered by any regulatory board or officer acting under statutory authority of the state or of the United States" are exempted, activities of banks do not come within this exemption.
Finally, while section 42-110b(b) provides that the courts of this state are to be guided by interpretations given by the FTC and the federal courts to the FTCA, it was held in Caldor, Inc. v. Heslin, 215 Conn. 590, 598, that a change in the statute in 1976 to provide that the courts are "guided by" the federal interpretations does not mean that the courts are limited by them and that practices which have not been specifically declared unlawful by federal authorities can still be unlawful under CUTPA. The defendant cannot escape liability under the third count of the complaint merely because it is a bank.
The fifth count of the complaint is also a CUTPA claim, where it is alleged that five special defenses filed by the defendant are not valid defenses and that the third special defense is filed without probable cause, with malicious intent and is vexatious. The Court has already denied plaintiff's motion to strike the first four special defenses, indicating that the merits of those defenses present factual questions which must be determined at trial. See Memorandum of Decision dated January 29, 1991. A review of the special CT Page 3365 defenses does not indicate that they are frivolous even though they may not be successful at trial. In order for a practice to violate CUTPA there must be a showing of either an actual deceptive practice or a practice amounting to a violation of public policy. Daddona v. Liberty Mobile Home Sales, Inc., 209 Conn. 243, 254; Web Press Services Corporation v. New London Motors, Inc., 203 Conn. 342, 355. In Eamillo v. Liberty Mobile Home Sales, Inc., 208 Conn. 620,654 and Daddona v. Liberty Mobile Home Sales, Inc., supra, 255, it was held that there was nothing unfair or deceptive in a reasonably grounded constitutional challenge of a statute. In Suburban Restoration Co., Inc. v. Acmat Corporation, 700 F.2d 98, 102 (2nd. Cir. 1983) it was held that the filing of a single non-sham lawsuit cannot form the basis of a claim under CUTPA. There is nothing immoral, unethical or unscrupulous in defending a lawsuit and offering special defenses, at least where there is nothing on the face of the pleadings to indicate that the defendant intentionally raised bogus defenses. While it is true that one of the prongs of the three part test for whether a practice violates CUTPA is whether it offends public policy as it has been established by statute or the common law, Conaway v. Prestia, supra, 492, 493; Sportsman's Boating Corporation v. Hensley, 192 Conn. 747, 756; McLaughlin Ford, Inc. v. Ford Motor Co., supra, 568, it is well established in this state that a complaint or a counterclaim alleging vexatious suit cannot be filed until the party filing it prevails in the underlying cause of action; to allow a vexatious litigation claim to be raised in the initial action would only encourage such claims and would impair the presentation of honest but uncertain causes of action and defenses in the courts. Blake v. Levy, 191 Conn. 257, 263. A defendant should not be precluded from filing a doubtful or uncertain special defense, and required to make an election between foregoing a possibly successful special defense or filing it under penalty of having to defend a CUTPA claim. If the legal conclusions in the fifth count are disregarded, it does not state a valid cause of action.
The motion to strike the third count is denied. The motion to strike the fifth count is granted.
ROBERT A. FULLER, Judge